Argued and submitted September 3, affirmed December 8, 1980

# COLUMBIA COUNTY,
*Respondent,*

*v.*

# RANDALL,
*Respondent - Cross-Appellant,*

# SPRAGUE,
*Appellant - Cross-Respondent.*

## (No. 23184, CA 15774)

620 P2d 937

Nicholas D. Zafiratos, Astoria, argued the cause for appellant - cross-respondent. With him on the briefs was Zafiratos & Roman, Astoria.

Thomas Sauberli, Portland, argued the cause for respondent - cross-appellant. With him on the briefs were Duane Vergeer, and Vergeer, Roehr & Sweek, Portland.

John Hunnicutt, St. Helens, argued the cause and filed the brief for respondent.

Before Richardson, Presiding Judge, and Thornton and Buttler, Judges.

BUTTLER, J

## BUTTLER, J.

Intervenor, who is the owner of certain sheep allegedly injured or killed by defendant's dog, appeals from the trial court's granting of defendant's plea in abatement, which had the effect of dismissing the first four causes of action alleged in his complaint against defendant by which he claimed damages under ORS 609.140, notwithstanding the payment of those claims by the plaintiff County pursuant to ORS 609.170. Defendant cross-appeals from the judgment entered on a jury verdict in favor of intervenor and against him on intervenor's fifth cause of action claiming damages not asserted by intervenor in his claim against the County, and not paid by the County. We affirm as to both intervenor's appeal and the cross-appeal.

This saga began in January, 1977, when some of intervenor's sheep were injured and some were killed over a period of 10 days or so by a dog, the owner of which was not then known. If he had known the owner's identity, he could have maintained an action for double damages under ORS 609.140, which provides:

"(1) The owner of any livestock which has been damaged by being injured, chased, wounded or killed by any dog shall have a cause of action against the owner of such dog for the damages resulting therefrom, including double the value of any livestock killed and double the amount of any damage to the livestock."

The legislature provided an alternative remedy, apparently to take care of this kind of situation. The relevant statutes are:

ORS 609.170 which provides:

"In a county with a dog control program the owner of any livestock killed, wounded, chased or injured by any dog may, within 10 days after the killing, wounding, chasing or injuring occurred, or became known to him, present to the dog control board or county governing body a verified statement containing a full account of the incident, stating in detail the amount of damage claimed on account thereof, and the name and address of the owner or keeper of the dog, if known. The claim shall be supported by the affidavit of at least one disinterested person as to all material facts contained in it."

ORS 609.180 which provides:

"All claims presented as provided by ORS 609.170 shall be heard at the first regular session of the dog control board or county governing body after their presentation, or as soon thereafter as may be practicable. If any board or governing body determines that any livestock has been damaged by being injured, chased, wounded or killed, it shall file and enter a record of the value of the livestock and order a warrant drawn for the amount of damages thus found, or any portion thereof that it considers just, to be paid by the county treasurer out of the dog fund. If it considers the claim unjust, it shall disallow it and enter that fact upon its record. No claim shall be allowed where it appears that the injury or damage complained of was caused by a dog owned or controlled by the claimant or his agent."

ORS 609.190 which provides:

"In each case where a claim against the dog fund of any county has been paid by the dog control board or county governing body, the county shall be subrogated to all the rights of the owner of the livestock killed, wounded, chased or injured against the owner of the dog for damages. The district attorney shall proceed promptly, in a lawful way to collect it. Any money so collected shall be paid over immediately to the treasurer of the county and credited to the dog fund."

That alternative remedy is intended to be quick, easy and inexpensive and does not require knowledge of the identity of the owner of the errant dog. Intervenor chose this route for his compensation, and during February and March of 1977, he made timely claims to the County Dog Fund, pursuant to ORS 609.170, for the death and injury of certain of his sheep in the amount of $3,415.

In accordance with ORS 609.180, intervenor's claims were presented to the Board of County Commissioners, which accepted the claims in a reduced amount; checks totaling $2,305 were issued to intervenor. Meanwhile, the County learned that defendant's dog was responsible for the damage, and initiated this action pursuant to ORS 609.190 to collect the $2,305 it had paid intervenor. Shortly thereafter, intervenor learned of the County's action and discussed the situation with the County. At that time he indicated his displeasure with the County and the amount

it paid on his claims, and was told he could return the checks and proceed against defendant, which he declined to do. Instead, he said he would hold the uncashed checks and see how things turned out. Subsequently, he sought, and was granted, leave to intervene in this proceeding and filed his complaint against defendant, which after a series of amendments, asserted five causes of action. The first four causes corresponded to intervenor's earlier claims against the County, and sought as damages the amount of $3,440. The fifth cause of action alleged:

"As a direct and proximate result of the incidents alleged in the first, second, third and fourth cause of actions herein, intervenor has been further damaged in the sum of * * * $3828.56, which represents the losses sustained since these incidents through aborted lambs, bummer lambs, the loss of lambs born weak and otherwise smaller flock of newborn lambs."

Intervenor also sought double damages pursuant to ORS 609.140. On October 19, 1977, before intervenor amended his complaint to add his fifth cause of action, the County settled its claims with defendant for $500 and dismissed its lawsuit.

After intervenor added his fifth cause of action, defendant filed a plea in abatement asserting that the County, by virtue of its payment to the intervenor, was subrogated to all of the intervenor's claims against defendant and that because the County was the real party in interest and had settled with defendant, the entire lawsuit should be dismissed. Prior to the hearing on the plea in abatement, intervenor returned the County's checks. After a hearing at which testimony was taken, the trial court made specific findings and, based thereon, entered an order granting defendant's plea in abatement as to intervenor's first four causes of action, but denying it as to the fifth cause of action, which went to trial.

The jury returned a verdict for intervenor for $3,416, which the trial court doubled in accordance with ORS 609.140(1), and a judgment was entered for the doubled amount.

On intervenor's appeal, the only error assigned is stated as follows:

"The trial court erred in partially granting Defendant's Plea in Abatement on the basis that the County was subrogated to all Intervenor's rights and, therefore, its settlement with the Defendant barred any action by Intervenor against the Defendant, although Intervenor's claims had not been paid in full.

We treat the assignment as raising only the issue of whether the intervenor, having been paid by the County on the claims encompassed by his first four causes of action, is precluded from asserting claims against the defendant dog owner for the difference between the total amount of those claims and the amount paid thereon by the County, including the statutory double damages. Intervenor's failure to comply with Rules 7.19 and 7.25 preclude our considering his contention that he was not paid by the County: he does not assign error to the trial court's finding that the County paid him, and does not set forth the trial court's order either under his assignment of error or in the appendix. Accordingly, we treat the finding as supported by the record made at the hearing.

On the question which is properly raised by intervenor, we agree with the trial court's interpretation of ORS 609.190. The statutory scheme (ORS 609.140 to 609.190) gives an aggrieved livestock owner a choice of remedies: either seek expeditious relief from the County with a known fund, or search for the owner of the guilty dog and sue him for damages, including double damages, through the more expensive and cumbersome court system. ORS 609.180 and ORS 609.190 put the livestock owner on notice that if he chooses to look to the County for relief, he may not receive all that he claims and further, that if the County paid him on the claims, it would be subrogated to "all of the rights of the owner of the livestock killed, * * *" etc., against the owner of the dog. It would follow that the livestock owner, after the County has paid him, has no independent rights against the dog owner.

■ ■ As the subrogee, the County here had a claim against defendant in the amount it paid intervenor; therefore, it had a right to settle that claim in any manner, and for any reason, it saw fit. Accordingly, we hold that intervenor, after payment by the County, had no rights against

defendant with respect to claims asserted against the County and encompassed in his first four causes of action.

■ Defendant's cross-appeal presents a more difficult question: is intervenor's fifth cause of action also barred by the language of ORS 609.190 subrogating the County to *all* the rights of the paid claimant against the dog owner? We conclude that intervenor is not precluded from maintaining his fifth cause of action against defendant because that cause of action did not encompass damages included in any of the claims made against, or paid by, the County, even though the damages sought arose out of the same incidents. Defendant argues that intervenor would be splitting his cause of action if allowed to maintain his fifth cause of action. We disagree, because we read ORS 609.170 in a manner which would permit intervenor to have filed a separate claim for these damages subsequent to his first four claims, so long as the additional claim was submitted within 10 days after the injury "became known to him." He did not do so; instead he sued the dog owner. Because the County did not make payment on that claim, it did not become subrogated to the rights of the intervenor against the dog owner with respect to that claim.

It follows that defendant's settlement with the County prior to trial does not bar intervenor's action because the action between the County and defendant did not involve intervenor's fifth claim.

■ As a final argument against allowing intervenor's claim, defendant asserts that intervenor's action should be barred because a suit against a debtor must be maintained in the names of both the subrogor and subragee and intervenor did not join the County. *Home Mutual Ins. Co. v. O.R. & N. Co.,* 20 Or 569, 26 P 857, 23 AS 151 (1891), overruled on other grounds, *Williams v. Pacific Surety Co.,* 66 Or 151, 158, 127 P 145, 131 P 1021, 132 P 959, 133 P 1186 (1913). That principle applies, however, only when both parties own the cause of action. In light of our conclusion that the County had no subrogation rights with respect to intervenor's fifth cause of action, the requirement of joinder is inapplicable.

Having concluded that intervenor was entitled to go to trial on his fifth cause of action, we turn to defendant's remaining assignments of error.

■    Defendant assigns as error the failure to give the following requested jury instruction:

"* * * [Y]ou cannot award plaintiff damages for any injuries for which he made claim with the County, *nor for any damages which he knew or should have known occurred within ten days of each incident for the reason that all such claims belong to the County.*

"*Thus, you may award damages to the plaintiff for only those injuries, if any, that you find were reasonably undiscoverable within ten days of each incident.*" (Emphasis added.)

Based on our earlier discussion, that would not be a correct statement of the law. First, the livestock owner's claims do not "belong" to the County in the sense that an assignee of those claims would own them and have the same rights against the dog owner as the livestock owner would—for example, the right to double damages. The County is only subrogated to the claims to the extent that it paid them. ORS 609.190. Second, there is nothing in the statute which requires a livestock owner to submit all claims if he submits any. The jury was instructed correctly that intervenor could not recover on any of the claims honored by the County. It is not contended that any of the injured lambs for which claims were made to the County aborted or give birth to defective young within the 10 day period; if that were the case, defendant's contention might have some merit. Refusal to give the instruction was not error.

Next, defendant assigns as error the giving of the following instruction:

"Furthermore, if you find that the defendant, Mr. Randall's dog, was responsible for the damage, it makes no difference if other dogs were also participating in damaging the plaintiff's livestock for under our law the defendant, Mr. Randall would be liable for all the losses and *would have a right of contribution from other dog owners.*" (Emphasis added.)

He contends that the last phrase is an "abstract instruction" and the giving of it was prejudicial error because there was some evidence that his dog was not involved in all of the incidents giving rise to damage.

■    An "abstract instruction" is one which either broadens the issues beyond the scope of the pleadings or beyond the scope of the evidence, thereby submitting ques-

tions to the jury which are not properly before them. *Godvig v. Lopez,* 185 Or 301, 309, 202 P2d 935 (1949). For an abstract instruction to be prejudicial this court must be able to say that under the circumstances disclosed by the record the jury may have been, and probably were, misled, to the injury of the complaining party. *Godvig v. Lopez, supra.*

■ The instruction is a near verbatim recitation of ORS 609.140(2).[1] The last phrase does not broaden the issues; it simply states the law. If anything, it eliminates a possible issue which might concern the jury if they found that other dogs did more damage than did defendant's: defendant would still be liable if his dog participated in all of the incidents, but would be entitled to contribution from the other dog owners. Giving the instruction was not error.

■ Finally, defendant contends the trial court erred in failing to sustain his motion to strike the following question and answer on hearsay grounds:

"Q. The information you had received indicated to you that there was some concern about a dog that had been on your premises?

"A. Yes."

Although the question may have elicited hearsay evidence, it could not have been prejudicial. Even if the court had stricken it, testimony which came in without objection prior thereto disclosed that intervenor had learned from a third person that a dog fitting the description of a dog, whose description he already had, had been on his premises and that upon receiving that information he went to defendant's house, but did not find the dog. Granting defendant's motion would have availed him nothing. There was no reversible error in denying it.

Affirmed.

---

[1] ORS 609.140(2) provides:

"If one or more of several dogs owned by different persons participate in damaging any livestock, the owners of the respective dogs shall be jointly and severally liable under this section. The owners of dogs jointly or severally liable under this section have a right of contribution among themselves. The right exists only in favor of an owner who has paid more than his pro rata share, determined by dividing the total damage by the number of dogs involved, of the common liability, and his total recovery is limited to the amount paid by him in excess of his pro rata share."